**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wesley Bullard,<br><br>    Plaintiff,<br><br>v.<br><br>Equifax Information Services LLC, et al.,<br><br>    Defendants. | No. CV-25-04825-PHX-SHD<br><br>**ORDER** |

At issue is the Motion to Dismiss (the "Motion") filed by Defendants Equifax Information Services LLC ("Equifax") and Trans Union LLC ("Trans Union") (collectively, the "CRA Defendants") under Federal Rule of Civil Procedure 12(b)(6). (Doc. 18.)  For the following reasons, the Motion will be **granted**.

## I.    FACTUAL BACKGROUND

Plaintiff Wesley Bullard holds a "Goldman Sachs Apple Card" credit card account ending in *7574 (the "Account"). (Doc. 1 at ¶ 48.) Beginning in June 2021, Bullard alleges he experienced repeated problems making payments to the Account.  (*Id.* at ¶¶ 49–50.) Specifically, Bullard contends that Defendant Goldman Sachs Bank ("Goldman Sachs") rejected his Automated Clearing House ("ACH") payment attempts, and that he made approximately fourteen unsuccessful payment attempts between June and July 2021.  (*Id.*)

Around July 28, 2021, Bullard sent a certified letter to Goldman Sachs "documenting his attempts to have the payment issues concerning his Apple Card corrected."  (*Id.* at ¶ 51.)  After further inquiries, a Goldman Sachs manager advised

Bullard to use an alternative payment method by adding funds to his Apple Cash account and using that balance to pay the Account. (*Id.* at ¶ 52.)  Using that method, a $650 payment was successfully processed on August 4, 2021. (*Id.* at ¶ 53.)  The underlying ACH problem, however, was not resolved. (*Id.* at ¶ 59.)  Bullard alleges that subsequent attempts to pay via ACH continued to fail, and that since August 2021 he has been required to make every payment to the Account through the Apple Cash workaround to avoid further delinquencies. (*Id.* at ¶¶ 59–61.)

After Bullard resolved the payment issues, he discovered that Goldman Sachs had reported—and that Defendants Equifax and Trans Union, two Credit Reporting Agencies ("CRAs"), had included in his consumer reports—late-payment notations relating to the June and July 2021 payment obligations. (*Id.* at ¶¶ 54–57.)  Specifically, the CRA Defendants reported a 30-day late notation for June 2021 and a 60-day late notation for July 2021. (*See id.* at ¶¶ 71, 78.)

To investigate the cause of the failed payments, Bullard conducted a three-way call with his bank, USAA Bank, and a Goldman Sachs Bank representative, in which USAA Bank confirmed that it had "attempted to send each of the payments" and that the errors occurred on Goldman Sachs's end. (*Id.* at ¶¶ 63–64.)

Around September 26, 2025, Bullard submitted disputes to both of the CRA Defendants regarding the late-payment notations, disputing them as inaccurate. (*Id.* at ¶¶ 65–66.)  With his disputes, Bullard included "documents showing evidence of the payment error and his letter to Defendant Goldman Sachs inquiring about the issue." (*Id.* at ¶ 67.)  Bullard requested that the CRA Defendants reinvestigate the dispute information and correct the reporting. (*Id.* at ¶ 68.)

On October 13, 2025, Equifax responded that the Account had been updated and provided a revised report; on October 15, 2025, Trans Union did the same. (*Id.* at ¶¶ 70, 77.)  On both revised reports, however, the 30-day late notation for June 2021 and the 60-day late notation for July 2021 remained. (*Id.* at ¶¶ 71, 74, 78, 81.)

Bullard alleges that the inaccurate reporting caused him significant harm because,

as a United States Army Signals Intelligence Analyst, he was required to maintain credit in good standing without delinquencies to retain his Top Secret/SCI clearance. (*Id.* at ¶ 108.) He alleges that he was required to report and explain the inaccurate notations to his leadership, that he suffered anxiety and migraines as a result, and that he ultimately took medical retirement. (*Id.*) Bullard further alleges damage to his credit rating, loss of the ability to benefit from his good credit, time and effort expended disputing the inaccurate reporting, and emotional distress including humiliation and embarrassment from credit denials. (*Id.* at ¶ 109.)

Bullard filed his Complaint on December 19, 2025, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. As against the CRA Defendants, Bullard asserts claims under 15 U.S.C. § 1681e(b) for failure to follow reasonable procedures to assure maximum possible accuracy, and under 15 U.S.C. § 1681i for failure to conduct a reasonable reinvestigation. (*Id.* at ¶¶ 110–28.) On February 19, 2026, the CRA Defendants jointly filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 18.) Bullard responded, (Doc. 20), and CRA Defendants replied, (Doc. 25).[1]

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true" and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, legal conclusions are not accepted as true, nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" considered. *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (citation modified)). That said, "a

---

[1] The parties did not request oral argument, and it is not necessary, so this motion is decided without holding a hearing. *See* LRCiv 7.2(f).

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need *detailed* factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added).  A "well-pleaded complaint may proceed even if . . . actual proof of those facts is improbable, and [ ] a recovery is very remote and unlikely." *Id.* at 556 (citation modified).

## III.   DISCUSSION

The CRA Defendants move to dismiss on the ground that Bullard has failed to plausibly allege an inaccuracy in his consumer report, as required to state a claim under both § 1681e(b) and § 1681i of the FCRA.  (*See* Doc. 18 at 5–6.)

### A.   Inaccuracy Under Ninth Circuit Law

The FCRA requires CRAs to "follow reasonable procedures to assure the maximum possible accuracy" of consumer reports, 15 U.S.C. § 1681e(b), and to "conduct a reasonable reinvestigation" upon receiving notice of a consumer dispute, *id.* § 1681i(a)(1)(A).  To state a claim under either provision, a plaintiff must first make "a prima facie showing of inaccurate reporting by the CRA." *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (quotation marks omitted).  Information on a consumer report is "inaccurate" if it is "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.* (citation omitted).  Without a cognizable inaccuracy, courts "need not consider whether [the CRA] had reasonable procedures or conducted reasonable reinvestigations." *Id.* at 759.

The Ninth Circuit has further explained that not every consumer grievance with a report describes an actionable inaccuracy.  In *Carvalho v. Equifax Info. Servs., LLC*, the court held that "credit reporting agencies are not tribunals.  They simply collect and report information furnished by others.  Because CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." 629 F.3d 876, 891 (9th Cir. 2010).  "A CRA is not required as part of its reinvestigation duties to provide a legal opinion" on the validity of a consumer's debt; rather, "determining whether the

- 4 -

consumer has a valid defense is a question for a court to resolve in a suit against the creditor, not a job imposed upon consumer reporting agencies by the FCRA." *Id.* at 892 (cleaned up). That principle extends beyond debt-validity disputes to disagreements over who bears responsibility for a concededly late payment: "a consumer who avails [himself] of a good or service but defaults on payment would be considered less creditworthy than one who does not, regardless of how legally sound [his] reasons for default are." *Id.* at 891; *see also Braun v. Trans Union LLC*, 2019 WL 13083348, at *3 (C.D. Cal. 2019) ("Plaintiff's payment was unquestionably late; she merely disputes that the lateness was not her fault. This is not sufficient to plead a 'materially misleading' statement on her credit report."); *Tuttobene v. Trans Union, LLC*, 2021 WL 2188232, at *2 (D. Nev. 2021) ("A CRA . . . does not violate § 1681i(a) by accurately reporting a late payment even if the consumer has a good explanation for why the payment was late.").

Bullard's own allegations establish that the CRA Defendants did not engage in inaccurate reporting. Bullard concedes that his June and July 2021 payment obligations to Goldman Sachs were not satisfied until August 4, 2021, when his Apple Cash payment finally processed. (Doc. 1 at ¶¶ 48–53.) The Complaint alleges that Bullard's earlier payment attempts were "unsuccessful" (*id.* at ¶ 50), that Goldman Sachs never received those payments (*id.* at ¶¶ 50, 62), and that Bullard did not contact Goldman Sachs about the problem until July 28, 2021—well after the June payment was overdue (*id.* at ¶ 51). On these facts, the CRA Defendants' reporting of a 30-day late notation for June 2021 and a 60-day late notation for July 2021 is neither "patently incorrect" nor materially misleading. *See Shaw*, 891 F.3d at 756. The Complaint confirms that payments were due, that they were not received until after their due dates, and that Goldman Sachs accordingly reported the Account as delinquent.

Bullard's grievance is not properly directed at the CRA Defendants. At bottom, Bullard contends that he should not be reported as late because Goldman Sachs's processing failures—rather than any fault of his own—caused the payments to be rejected. (Doc. 1 at ¶¶ 49–50, 64; Doc. 20 at 9–11.) Bullard further alleges that his bank, USAA

- 5 -

Bank, transmitted each of the attempted ACH payments and confirmed during a three-way call that any errors occurred on Goldman Sachs's end. (*Id.* at ¶¶ 63–64.) But it is not the CRA Defendants' responsibility to resolve a dispute among Bullard, Goldman Sachs, and USAA Bank over who is ultimately responsible for the delinquency. The Ninth Circuit has held that such disputes are not cognizable against a CRA under the FCRA. *See Carvalho*, 629 F.3d at 891–92.

A recent decision from the Southern District of California is directly on point. In *Bohan v. Citibank, N.A.*, the plaintiff alleged that he had enrolled in autopay on a credit card, the furnisher (Citibank) incorrectly input his information, the resulting missed payments were the furnisher's admitted fault, and that the CRAs nonetheless reported the resulting delinquencies. 2026 WL 1047420, at *1 (S.D. Cal. 2026). The plaintiff argued, as Bullard does here, that the CRAs' reporting was "misleading" because it "created the false impression that Plaintiff failed to pay because of financial irresponsibility, when in reality the delinquency resulted from [the furnisher's] admitted processing error." *Id.* at *2 (quotation marks omitted). The court rejected that theory as "contrary to Ninth Circuit law," holding that *Carvalho* forecloses claims that turn on adjudicating fault between a consumer and a furnisher. *Id.* The court emphasized that a consumer who defaults on payment is less credit worthy regardless of how legally sound the reasons for default may be. *Id.* (citing *Carvalho*, 629 F.3d at 891).

I find the reasoning in *Bohan* persuasive, and its facts are materially indistinguishable from those alleged here. Bullard, like Mr. Bohan, does not allege that the payments were received on time; he alleges that the furnisher's processing failures caused them to be late. Whether Bullard failed to properly pay Goldman Sachs, USAA Bank failed to transmit his payments, or Goldman Sachs failed to process or credit them, the pertinent dispute is between Bullard, Goldman Sachs, and USAA Bank over their respective contractual and operational obligations—and does not involve any inaccuracy

in the CRA Defendants' reporting.[2] As in *Bohan*, the CRA Defendants here accurately reported what the furnisher reported and what the historical record reflects: that the June and July 2021 obligations were not satisfied until August 4. Under *Carvalho* and *Bohan*, that is the end of the inquiry. Bullard has therefore failed to plausibly allege a cognizable inaccuracy under binding Ninth Circuit law.[3]

### B. The Alternative "Objectively and Readily Verifiable" Standard

Bullard urges application of a different standard, adopted by several other circuits, that an inaccuracy is actionable under the FCRA if it is "objectively and readily verifiable." (Doc. 20 at 8–9.) The Ninth Circuit has not adopted the "objectively and readily verifiable" standard. *See Silva v. Santander Consumer USA Inc.*, 2025 WL 3215772, at *3 (W.D. Wash. 2025) (noting "there is no definitive Ninth Circuit case law adopting the 'objectively and readily verifiable test' for § 1681e(b) claims"). *Carvalho* and *Shaw* therefore remain binding and govern resolution of this case. But even under Bullard's preferred standard, his claims fail.

The "objectively and readily verifiable" standard is not satisfied when assessing the

---

[2] Bullard's reliance on *Abukhodeir v. AmeriHome Mortgage Co.*, 2021 WL 3510814 (M.D. Fla. 2021), does not change this conclusion. In *Abukhodeir*, the court refused to dismiss claims against a *furnisher-defendant* (not a CRA) that had acknowledged wrongdoing in its reporting of inaccurate or misleading information and had failed to subsequently correct plaintiff's credit files. This case is not applicable here and, in any event, does not authorize the rejection of binding precedent from the Ninth Circuit.

[3] Bullard's citation to *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) to suggest that he has sufficiently alleged an inaccuracy in the CRA Defendants' reporting under binding Ninth Circuit law, (*see* Doc. 20 at 7, 8, 14), is borderline frivolous. *Gorman* addressed the duties of a furnisher of information under 15 U.S.C. § 1681s-2(b); it did not address—and does not govern—a CRA's duties under § 1681e(b) or § 1681i, which are at issue here. *See Gorman*, 584 F.3d at 1153–54. That distinction is fundamental to the FCRA. This is not the first time that attorneys from Bullard's law firm have cited caselaw concerning a furnisher as if it governed a CRA's obligations in FCRA litigation before me. I recently dismissed FCRA claims against a CRA brought by attorneys from the same firm where the plaintiff likewise relied on *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246 (9th Cir. 2022)—another furnisher case—as purported support for CRA liability. *See Harris v. Experian Info. Sols. Inc.*, 2026 WL 1194575, at *1 (D. Ariz. 2026) (explaining that "*Gross* addresses the investigative obligations of *furnishers* like Discover under § 1681s-2(b), not the obligations of *CRAs* like Experian under §§ 1681e(b) and 1681i," and that *Gross* itself "expressly distinguishes the two" (emphases in original)). Bullard's counsel and the firm are cautioned that continued reliance on furnisher-specific authority to support claims against CRA defendants may result in a *sua sponte* order to show cause why sanctions should not be imposed under Federal Rule of Civil Procedure 11.

alleged inaccuracy requires "bespoke attention and legal reasoning." *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 270 (2d Cir. 2023). "[I]naccuracies that turn on legal disputes are not cognizable under the FCRA." *Id.* Instead, "if a legal question is sufficiently settled so that the import on a particular debt is readily and objectively verifiable, the FCRA sometimes requires that the implications of that decision be reflected in credit reports." *Id.* at 271.

A district court applying *Mader's* framework concluded in an analogous fault-allocation case that the plaintiff failed to state a claim under the FCRA. In *Silber v. TransUnion, LLC*, the plaintiff alleged that he had missed credit card payments because his autopay was discontinued without notice, and that the CRAs' reporting of the resulting late notations was misleading because the missed payments were not his fault. 2025 WL 588620, at *3 (S.D.N.Y. 2025). The court rejected that theory. Because the plaintiff conceded the payments were missed, the information was "objectively and readily verifiable," and the plaintiff's contention that someone else bore responsibility "mistakenly situate[d] his opposition to CRA Defendants' actions in fault—a factor that is irrelevant in [the plaintiff's] case." *Id.* at *4. Accordingly, the court found that his "allegations regarding fault [did] not invalidate the accuracy of the CRA Defendants' reporting." *Id.*

The same reasoning applies here. The information in dispute here is, indeed, objectively and readily verifiable. The CRA Defendants reported that Bullard's June and July 2021 payments to Goldman Sachs were late, and Bullard concedes in his Complaint that those payment obligations were, in fact, late because they were not satisfied until August 4, 2021. (*See* Doc. 1 at ¶¶ 50, 53.) Bullard, like Mr. Silber, mistakenly assigns fault to the CRA Defendants' actions. As discussed above, whether Bullard, Goldman Sachs, or USAA Bank bears responsibility for the failed ACH attempts is a dispute between them, and does not involve an inaccuracy by the CRA Defendants. Simply put, Bullard's allegations do not invalidate the accuracy of the CRA Defendants' reporting, which correctly reflected that payments were due, they were not received until after their due dates, and the Account was delinquent.

Bullard's claims thus fail under either standard.  Accordingly, because Bullard allegation of an inaccuracy under § 1681e(b) and § 1681i is insufficient as a matter of law, both counts he asserts in the Complaint fail.  The CRA Defendants' Motion to Dismiss, (Doc. 18), will therefore be granted.

**C.    Leave to Amend**

Bullard will not be granted leave to amend, as any amendment would be futile.  His allegations—that the payments were not received by Goldman Sachs until August 4, 2021 (Doc. 1 at ¶ 53), and that Bullard's earlier ACH attempts were "unsuccessful" (*id.* at ¶ 50)—foreclose any amended theory of completed, timely receipt necessary to establish an inaccuracy by the CRA Defendants.  The only theory available to Bullard consistent with his existing allegations is the fault-allocation theory *Carvalho* and *Bohan* expressly reject.  Amendment would therefore be futile.  *See Carvalho*, 629 F.3d at 893 ("Because we hold that Carvalho cannot make a prima facie case of inaccurate reporting, we conclude that amendment to include other claims requiring inaccuracy would be futile.").

**IT IS ORDERED** that CRA Defendants' Motion to Dismiss (Doc. 18) is **GRANTED**.  Plaintiff's claims against Defendants Equifax Information Services LLC, and Trans Union LLC, are dismissed, with prejudice, in their entirety.

Dated this 27th day of May, 2026.

Honorable Sharad H. Desai
United States District Judge