**CONSUMER JUSTICE LAW FIRM PLC**

Beth K. Findsen, AZ No. 023205
8095 N. 85th Way,
Scottsdale, AZ 85258
T: 602-807-6676
F: 480-613-7733
E: bfindsen@consumerjustice.com

David A. Chami, 027585
8095 N. 85th Way
Scottsdale, AZ 85258
T: (480) 626-2359
F: (480) 613-7733
E: dchami@consumerjustice.com

*Attorneys for Plaintiff*
*Wesley Bullard*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wesley Bullard, | Case No.: 2:25-cv-04825-SHD |
| Plaintiff, | District Judge: Sharad H. Desai |
| v. | |
| Equifax Information Services, LLC, Trans Union LLC, and Goldman Sachs Bank USA, | **PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING CRA DEFENDANTS' JOINT MOTION TO DISMISS** |
| Defendants. | |

Plaintiff Wesley Bullard respectfully moves under Federal Rule of Civil Procedure 54(b) and LRCiv 7.2(g) for reconsideration of the Court's May 27, 2026, Order granting the joint motion to dismiss (ECF No. 29, the "Order") filed by Defendants Equifax

1

Information Services LLC ("Equifax") and Trans Union LLC ("Trans Union") (together, "Defendants").

Plaintiff requests that the Court vacate the dismissal with prejudice and deny the CRA Defendants' motion to dismiss. Plaintiff also respectfully requests clarification of footnote 3 to make clear that the Court's Rule 11 warning does not preclude Plaintiff from using furnisher-side FCRA cases for the limited proposition that the same reported information may be patently incorrect or materially misleading, while recognizing that CRAs and furnishers have distinct statutory investigation duties.

## I.    **<u>INTRODUCTION</u>**

The Order rests on the following dispositive premise: because Plaintiff's ACH/bank-transfer payments did not ultimately process until Defendant Goldman Sachs Bank USA ("Goldman Sachs") directed him to an Apple Cash workaround, the CRA Defendants could report Plaintiff as late without creating a cognizable FCRA inaccuracy. (ECF No. 29 at 5-9). The opinion in *Zimmerman v. Bank of America, N.A.* (No. 25-CV-10164-VC, 2026 WL 1471875 (N.D. Cal. May 26, 2026)) was issued by another Ninth Circuit district court one day before the Order, and it addresses that precise premise and rejects it in a materially similar CRA case. *See* Exhibit A.[1]

*Zimmerman* does not bind this Court. But it is new legal authority under LRCiv 7.2(g), it was issued after the CRA Defendants' motion was fully briefed, and it addresses the very point – and the very case law – on which the Order turned. The CRA defendants in *Zimmerman* made the same move Defendants made here: they characterized a creditor-

---

[1] A slip opinion is attached for the Court's convenience.

side payment-processing failure as a mere dispute over whose fault it was that the payment was late. Exhibit A at 1, 4. Judge Chhabria rejected that framing because a consumer who timely authorizes payment and has money available has not become delinquent – and therefore should not be reported as less creditworthy – merely because the lender failed to process the payment. *Id.* at 4-5.

The area warranting reconsideration is the Order's treatment of the FCRA inaccuracy predicate as materially dependent on whether the defendant is a consumer reporting agency or a furnisher. The statutory duties triggered by inaccurate information differ; Plaintiff does not contend otherwise. But the antecedent question of whether the item is inaccurate or materially misleading does not change based on which statutory defendant later reports or furnishes it. *Zimmerman* states the point cleanly: "If information is inaccurate when a data furnisher provides it, it is also inaccurate when a consumer reporting agency reports it." *Id.* at 6.

Here, the Complaint alleged that the Goldman Sachs card at issue repeatedly rejected Plaintiff's ACH/bank-transfer payments, that Plaintiff made at least fourteen payment attempts between June and July 2021, that USAA Bank confirmed it attempted to send each payment and that the errors were occurring on Goldman Sachs's end, and that Plaintiff provided the CRA Defendants documents showing the payment error with his disputes. (ECF No. 1, Compl. ¶¶ 49-50, 63-68). Those allegations state a factual payment-history dispute, not a legal challenge to the validity of the underlying debt. At minimum, *Zimmerman* confirms that the dismissal with prejudice should be reconsidered because

timely authorization, tender, payment-system rejection, and creditor-side nonprocessing can support a non-futile amended pleading.

## II.    RELEVANT BACKGROUND

Plaintiff filed this FCRA action on December 19, 2025, against Equifax Information Services LLC, Trans Union LLC, and Goldman Sachs Bank USA. *See* Compl. Plaintiff asserted claims against Equifax and Trans Union under 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i, and he asserted a furnisher claim against Goldman Sachs under 15 U.S.C. § 1681s-2(b). *Id.,* ¶¶ 110-33.

Plaintiff held a Goldman Sachs Apple Card account ending in *7574 ("Apple Card") and began experiencing payment problems in June 2021. Compl. ¶ 48. The Apple Card repeatedly rejected his payments whenever he attempted to pay the balance by ACH/bank transfer. *Id.,* ¶ 49. Plaintiff made at least fourteen unsuccessful payment attempts to the Apple Card between June and July 2021. *Id.,* ¶ 50.

On or about July 28, 2021, Plaintiff mailed Goldman Sachs a certified letter documenting his attempts to have the Apple Card payment issues corrected. Compl. ¶ 51. After multiple inquiries, a Goldman Sachs manager advised Plaintiff to add money to his Apple Cash account and use that balance to pay the Apple Card. *Id.,* ¶ 52. That workaround processed a $650 payment on August 4, 2021. *Id.*, ¶ 53.

After the workaround payment, Plaintiff discovered Equifax and Trans Union were reporting late-payment information on the Goldman Sachs Apple Card during the same period when his payment attempts were not working. Compl. ¶¶ 54-57. Plaintiff's Apple Card was up to date and in good standing when he discovered the reporting. *Id.*, ¶ 58. The ACH issue persisted after Plaintiff tested the payment method again, forcing him to

continue using the Apple Cash workaround to avoid further derogatory reporting. *Id.*, ¶¶ 59-61.

Plaintiff continued to dispute the failed ACH-payment issue with Goldman Sachs, but Goldman Sachs continued to claim it never received the payments. Compl. ¶ 62. Plaintiff then conducted a three-way call with USAA Bank and a Goldman Sachs representative. *Id.*, ¶ 63. During that call, USAA confirmed that it had attempted to send each payment to Goldman Sachs and that the errors were occurring on Goldman Sachs's end. *Id.*, ¶ 64.

On or about September 26, 2025, Plaintiff disputed the Apple Card late notations with Equifax and Trans Union. Compl. ¶ 65. Plaintiff explained that the late-payment reporting for June and July 2021 was inaccurate. *Id.*, ¶ 66. Plaintiff attached documents showing evidence of the payment error and his letter to Goldman Sachs inquiring about the issue. *Id.*, ¶ 67. Plaintiff requested that Equifax and Trans Union reinvestigate the disputed information and correct the reporting. *Id.*, ¶ 68.

Equifax responded on October 13, 2025, stating that the Apple Card account had been updated, but it continued reporting the account as 30 days late for June 2021 and 60 days late for July 2021. Compl. ¶¶ 70-71. Trans Union responded on October 15, 2025, stating that the account had been updated, but it also continued reporting the account as 30 days late for June 2021 and 60 days late for July 2021. *Id.*, ¶¶ 77-78. Equifax and Trans Union both failed to adequately review the information Plaintiff provided, failed to conduct reasonable reinvestigations, and failed to correct or delete the late-payment reporting. *Id.*, ¶¶ 72-75, 79-82.

The CRA Defendants moved to dismiss on February 19, 2026, arguing that Plaintiff did not plausibly allege an inaccuracy because the payments were late regardless of the cause. (*See generally* ECF No. 18). Plaintiff opposed the motion on March 5, 2026, and argued that the pleaded issue was factual because Plaintiff had tendered payment and Goldman Sachs's payment-processing error caused the derogatory reporting. (*See generally* ECF No. 20). The CRA Defendants replied on March 19, 2026, and again framed the issue as a dispute among Plaintiff, USAA, and Goldman Sachs over responsibility for late payments. (*See generally* ECF No. 25).

On May 26, 2026, the Northern District of California denied a motion to dismiss filed in *Zimmerman* by CRA defendants, including Equifax and Trans Union. *See* Exhibit A. On May 27, 2026, this Court granted the CRA Defendants' motion and dismissed Plaintiff's claims against Equifax and Trans Union with prejudice. Order at 9.

## III.   <u>LEGAL STANDARD</u>

Because the Order dismissed only Plaintiff's claims against Equifax and Trans Union and did not adjudicate Plaintiff's claim against Goldman Sachs, the Order is interlocutory and may be revised before final judgment. Fed. R. Civ. P. 54(b). Local Rule 7.2 provides that a motion for reconsideration will ordinarily be denied absent manifest error or new facts or legal authority that could not have been brought to the Court's attention earlier with reasonable diligence. LRCiv 7.2(g)(1).

## IV.   <u>ARGUMENT</u>

**A. *Zimmerman* Is New Legal Authority That Could Not Practicably Be Presented Before The Order.**

6

LRCiv 7.2(g) expressly permits reconsideration based on new legal authority that could not have been brought to the Court's attention earlier with reasonable diligence. LRCiv 7.2(g)(1). That is this case. The CRA Defendants' motion was fully briefed on March 19, 2026. *Zimmerman* was issued on May 26, 2026. This Court entered its Order the next day, on May 27, 2026.

While Plaintiff does not contend that *Zimmerman* is controlling law, it is new legal authority on the exact point that controlled the dismissal, issued after briefing closed and immediately before the Order. Filing this motion within fourteen days of the Order is the first practical opportunity for Plaintiff to present *Zimmerman* with the limited argument necessary to explain why it matters.

And *Zimmerman* matters because the Court's Order relied heavily on *Bohan v. Citibank, N.A.* (2026 WL 1047420 (S.D. Cal. 2026)) to conclude that Plaintiff's claim was a fault-allocation dispute rather than a factual inaccuracy. Order at 6-7. *Zimmerman* considered the same line of CRA AutoPay or payment-processing cases, including *Bohan*, *Braun*, *Spira*, and *Arniella*, and rejected their premise. *See* Exhibit A at 5-6.

**B. The Inaccuracy Predicate Does Not Turn On Whether The Defendant Is A CRA Or A Furnisher.**

The FCRA duties of CRAs and furnishers are different, but the threshold concept of inaccuracy does not change based upon whose duties are at issue in a case. For claims under §§ 1681e(b), 1681i, and/or 1681s-2(b), the plaintiff must make a prima facie showing of inaccurate reporting, and information is inaccurate if it is patently incorrect or materially misleading in a way expected to affect credit decisions. *See Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756, 759 (9th Cir. 2018). For furnisher claims, the Ninth Circuit has

used the same threshold inaccuracy requirement while explaining that a furnisher's **investigation** duties are often more extensive because furnishers stand in a different relationship to the consumer and the debt; however, a threshold showing of inaccuracy is still required. *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) (citing *Shaw*, 891 F.3d at 756 (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010))).

The Order notes that *Gorman* and *Gross* do not govern the full scope of CRA duties under Sections 1681e(b) and 1681i. Order at 7, n.3. Plaintiff does not ask the Court to impose furnisher investigation duties on Equifax or Trans Union. The point is narrower: cases addressing whether late-payment reporting is patently incorrect or materially misleading are relevant to the antecedent inaccuracy question, **even when they arise in the furnisher context**. That limited use does not collapse the CRA and furnisher regimes. It keeps separate the threshold question of whether the information is inaccurate from the downstream question what each type of defendant must reasonably do about it.

*Zimmerman* squarely supports that distinction. The CRA defendants there argued that the consumer's final payment was accurately reported as overdue because any dispute about nonprocessing was a dispute over fault. *See* Exhibit A, at 1, 4. The court rejected that argument and held that when a consumer authorizes an automatic withdrawal and the money is available, "it is inaccurate to report the payment as overdue just because the lender failed to process it." *Id.* at 2. *Zimmerman* then addressed the CRA/furnisher divide directly: "If information is inaccurate when a data furnisher provides it, it is also inaccurate when a consumer reporting agency reports it. To the extent the caselaw suggests that the inaccuracy

inquiry hinges on whether the defendant is a consumer reporting agency or a data furnisher, that can't be right." *Id.* at 6.

That is the distinction missing from the Order's reasoning and from its footnote addressed to counsel, and it is why Plaintiff's counsel remains obligated to cite binding Ninth Circuit authority – including *Gorman* and *Gross* – on the threshold question of FCRA accuracy. The footnote treats Plaintiff's use of furnisher-side authority as though Plaintiff invoked those cases to define CRA reinvestigation duties. But Plaintiff's core proposition was that reporting a consumer late after the consumer timely tendered payment through the creditor's own payment channel can be materially misleading, and in the Ninth Circuit materially misleading reporting is inaccurate under the FCRA, regardless of the statutory defendant. *Zimmerman* confirms that proposition in a CRA case and explains why the defendant's statutory role cannot determine the truth value of the same derogatory item. *See* Exhibit A, at 4-6.

### C. Plaintiff Alleged A Factual Payment-History Inaccuracy, Not A Legal Attack On The Debt.

*Carvalho* does not bar Plaintiff's claim because Plaintiff is not asking the CRA Defendants to decide the legal validity of the Apple Card debt. *Carvalho* held that CRAs are not tribunals required to resolve legal disputes over debt validity or decide whether a consumer has a legal defense to payment. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891-92 (9th Cir. 2010). It did not hold that every creditor-side payment-processing error becomes legally irrelevant once the furnisher reports a late notation. *See* Exhibit A, at 5-6.

*Zimmerman* applied the *Carvalho* line of reasoning in the correct place. The court held that the relevant question was inherently factual: whether the consumer authorized the lender to deduct payment by the due date. *See* Exhibit A, at 5. The court explained that the case did not require the CRAs to determine whether the consumer was legally obligated to pay his debt. *Id.* It required inquiry into whether the payment was timely authorized and whether the lender failed to process it. *Id.*

The same framing applies here. The Complaint alleges that the Apple Card rejected Plaintiff's ACH/bank-transfer payments, that Plaintiff made at least **fourteen payment attempts** during June and July 2021, and that USAA confirmed it attempted to send each payment and that the errors were occurring on Goldman Sachs's end. Plaintiff then submitted dispute materials to Equifax and Trans Union **showing evidence** of the payment error and his letter to Goldman Sachs about the issue. Those allegations concern historical payment facts: what Plaintiff attempted, what USAA transmitted or attempted to transmit, what Goldman Sachs's system rejected or failed to process, and what the CRAs were told in the dispute. They do not ask the CRAs to decide whether Plaintiff owed the Apple Card debt, whether the contract was enforceable, or whether a legal defense excused nonpayment.

The Order concluded that Plaintiff conceded lateness because the successful Apple Cash workaround did not process until August 4, 2021. *See* Order, at 5, 8-9. *Zimmerman* explains why that fact is not dispositive. A lender's later failure to process a timely authorized payment does not make the consumer delinquent, just as a lender's loss of a timely received check does not mean the consumer paid late. *See* Exhibit A, at 1, 4-5. The issue is not whether money ultimately posted by August 4 through a workaround. The issue

is whether reporting Plaintiff as late plausibly misrepresented his creditworthiness after he had attempted to pay through Goldman Sachs's accepted ACH/bank-transfer channel and the payment failure occurred on Goldman Sachs's end.

And *Zimmerman* is not an outlier. *Regalado v. Experian Info. Sols., Inc.* (No. 2:22-cv-01309-RFB-NJK, 2023 WL 6393222, at *4 (D. Nev. Sept. 30, 2023)) held that a plaintiff who alleged automatic-payment failure on a car loan sufficiently stated an FCRA claim against CRAs at the pleading stage. Likewise, *McCracken v. Ally Bank* (No. 2:24-cv-03740-SB-JC, 2025 WL 2374831, at *2-*3 (C.D. Cal. July 14, 2025)) held that a plaintiff sufficiently alleged inaccuracy when he claimed a timely authorized phone payment was not credited on time and was reported late. These cases are not binding, but they show that Plaintiff's theory is not a frivolous attempt to impose furnisher duties on CRAs. It is a recognized Rule 12 theory under *Shaw* and *Carvalho* when the pleaded dispute is factual payment history. That theory is consistent with the FCRA's text and with the ordinary meaning of credit reporting accuracy. Applying a different inquiry into inaccuracy depending upon whether the defendant happens to be a CRA or a furnisher would invent a standard that does not exist in either the text of the statute or the Ninth Circuit authority interpreting that text.

## V.    **CONCLUSION**

Plaintiff respectfully requests that the Court grant reconsideration, vacate the dismissal with prejudice of the claims against Equifax Information Services LLC and Trans Union LLC, and deny the CRA Defendants' joint motion to dismiss. Plaintiff also respectfully requests that the Court clarify footnote 3's warning of sua sponte sanctions for

11

the undersigned's citation to Ninth Circuit authority on the threshold issue of accuracy under the FCRA.


Date: June 4, 2026                    **CONSUMER JUSTICE LAW FIRM PLC**

By: */s/ Beth K. Findsen*
Beth K. Findsen, AZ No. 023205
8095 N. 85th Way,
Scottsdale, AZ 85258
T: 602-807-6676
F: 480-613-7733
E: bfindsen@consumerjustice.com

David A. Chami, 027585
8095 N. 85th Way
Scottsdale, AZ 85258
T: (480) 626-2359
F: (480) 613-7733
E: dchami@consumerjustice.com

*Attorneys for Plaintiff*
*Wesley Bullard*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2026, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

**CONSUMER JUSTICE LAW FIRM PLC**

By: */s/ Marie Tirona*